PATRICK B. CRISAFULLI et al., Respondents-Appellants, *v.* HAL L. CHILDS, Appellant-Respondent.

Fourth Department, February 12, 1970.

*Nixon, Hargrave, Devans & Doyle* (*David M. Lascell* of counsel), for appellant-respondent.

*Richard C. Mitchell* for respondents-appellants.

BASTOW, J. In this action plaintiffs sought a declaration that a promissory note and related papers executed by them were null and void upon the ground that they violated the usury statutes of this State (General Obligations Law, §§ 5–501, 5–511). Defendant in his answer asserted a counterclaim to recover the balance due ($13,500) on the note together with other relief. The respective motions of plaintiffs and defendant for summary judgment were denied and all parties appeal. Determination of the appeal, involving as it does a question of conflict of laws, requires a brief factual statement.

In April, 1967 plaintiffs, residing in Oswego, New York, contracted in writing with Eastern Vacuum Cooling, Inc. (Eastern) of Philadelphia, Pennsylvania to purchase a cooling machine for $35,000. The sum of $3,000 was paid on signing of the contract. The balance with legal interest thereon was payable in stated sums commencing on July 1, 1967 and concluding on December 15, 1968. The writing further provided that Eastern on or before November 1, 1967 would accept $15,000 in full settlement of the balance of $20,000 then due. Plaintiffs agreed to use their best efforts to obtain a loan for such sum but if they failed Eastern on request agreed to obtain a loan for plaintiffs in the sum of $15,000 to be paid over a period commencing on April 1, 1968 with interest at the rate of 10% per annum on all unpaid balances.

Subsequently plaintiffs' counsel wrote to a firm of attorneys in Philadelphia, which had represented Eastern and later represented defendant, stating that plaintiffs had been unable to obtain a loan and calling on Eastern for the requisite action as provided in the contract. Ensuing negotiations resulted in defendant loaning plaintiffs the sum of $15,000 secured by a

so-called Pennsylvania judgment note dated December 22, 1967. This provided for stated payments commencing on April 1, 1968 with interest at 10% per annum. The writing contained a further provision authorizing entry in any court of record of a *cognovit* judgment on warrant of attorney without notice to plaintiffs. Lastly plaintiffs executed a so-called security agreement — not reproduced in the record — which was in the nature of a chattel mortgage on the machine theretofore purchased from Eastern. Thereafter, defendant filed a financing statement (Uniform Commercial Code, § 9–402) in the Oswego County Clerk's office.

Plaintiffs paid defendant the first installment of $1,500 with interest at 10% on the principal sum but refused to make further payments, taking the position that the note was void because executed in violation of the usury laws of this State. On July 8, 1968 *cognovit* judgment on warrant of one of defendant's attorneys was entered in a Pennsylvania court for the full amount of $15,000 and costs. Defendant now concedes that the first counterclaim in his answer based on this judgment fails to state a cause of action. (*Atlas Credit Corp.* v. *Ezrine,* 25 N Y 2d 219.)

Special Term in denying the respective motions for summary judgment concluded that a trial was required to ascertain the intention of the parties inasmuch as they had not expressed a choice of forum in the agreement. In so doing the court erred, as this traditional view of the choice of law rules, as hereinafter more fully stated, has been rejected by recent decisions of our highest court. (Cf. *Intercontinental Planning* v. *Daystrom, Inc.,* 24 N Y 2d 372, 382.) Moreover, where the issue, as here, is one of choice of forums it is, even at trial, one of law to be determined by the court upon the proof before submitting to the jury the basic issues framed by the pleadings. (*Anderson* v. *A/S Berge Sigval Bergesen,* 29 A D 2d 756, affd. 22 N Y 2d 944.) On appeal the respective parties in substance concede that only a question of law is presented for determination.

The choice of a forum becomes relevant because, concededly, the note providing for annual interest of 10% violates the statute of this State limiting such interest to 6% (General Obligations Law, § 5–501) and, if New York law should be applied, the agreement providing for a greater sum would be void and unenforceable (§ 5–511). The statute of Pennsylvania similarly provides for a maximum legal annual interest rate of 6% (41 Purdon's Pa. Stat., § 3) but further provides that if a greater rate is contracted for the " debtor shall not be required to pay to the creditor the excess over the legal rate ". (41 Purdon's Pa. Stat., § 4).

The traditional view of the choice of law rules concerning contracts, where the parties have not expressed such choice in their agreement, has been rejected in this State in favor of the application of the law of the jurisdiction having the greatest interest in the litigation (*Intercontinental Planning* v. *Daystrom, Inc.*, 24 N Y 2d 372, 382, *supra*; *Miller* v. *Miller*, 22 N Y 2d 12, 15–16 and *Auten* v. *Auten*, 308 N. Y. 155, 161). In *Intercontinental Planning* (*supra*, p. 382) the court quoted with approval the following from *Miller* v. *Miller* (*supra*): " ' [T]he rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict '."

Turning to the facts in this case we find that the Pennsylvania judgment note and related papers were prepared in that State and sent to plaintiffs in this State. It was payable to defendant — a resident of Connecticut — but no place of payment was specified therein. Plaintiffs added to the note the words and figures " Oswego, New York, December 22, 1967," executed the instrument and related papers and returned them to the Philadelphia attorneys. At the same time plaintiffs received defendant's check drawn on a Philadelphia bank and payable to them and Eastern. This was indorsed by plaintiffs and returned to the attorney who delivered it to Eastern in Pennsylvania. The note, as stated, authorized entry of a *cognovit* judgment in any court of record. The financing statement, as stated, was filed in a County Clerk's office of this State where, of course, the machine was located. The payments were to be made to the attorneys in Philadelphia and one payment was so made.

It well might be that upon these facts it could be found that Pennsylvania had the most significant contacts with the matter in dispute. There would remain, however, the question as to whether the judicial enforcement of such foreign based contract rights, which patently violated our usury statute, " would be the approval of a transaction which [was] inherently vicious, wicked or immoral, and shocking to the prevailing moral sense." (*Intercontinental Hotels Corp.* v. *Golden*, 15 N Y 2d 9, 13.) At least one court in this jurisdiction has decided, however, by applying the so-called " most significant contacts " rule, that a contract violative of New York's usury laws but legal in Massachusetts should be enforced. It concluded that a mortgage providing for 12% annual interest given by residents of this State to a Massachusetts corporation on realty in this State was enforceable and not contrary to the public policy of this State.

(*Pioneer Credit Corp.* v. *Catalano,* 51 Misc 2d 407, affd. 28 A D 2d 595.)

We prefer to decide the issues upon somewhat different grounds. Through the years there has developed the legal principle that "If a contract would be usurious under the general usury statutes of all states to which it has a substantial relationship, the forum will apply the usury statute of that state which imposes the lightest penalty." (Restatement, Conflict of Laws 2d, Proposed Official Draft, Part II, 1968, § 203, Comment *d*). (See, also, 2 Beale, Conflict of Laws, 1115; Goodrich, Conflict of Laws [4th ed.], 217; Leflar, Conflict of Laws, § 131.) This principle would have particular pertinency here for, as stated, both forums by statute prohibit a greater annual interest rate than 6%. Pennsylvania, however, limits recovery to that percentage, if a greater rate is contracted for, while New York invalidates the agreement.

The decisional law as to the applicability of the rule is not unanimous. It has been followed in *Wiltsek* v. *Anglo-Amer. Props.* (277 F. Supp. 78) and *Hawkins* v. *Ringel* (231 N. Y. S. 2d 476, revd. on other grounds 19 A D 2d 649). See, also, *Speare* v. *Consolidated Assets Corp.* (367 F. 2d 208, 211). A contrary conclusion was reached in *Huchingson* v. *Republic Finance Co.* (236 Ark. 832).

The application of the rule would produce a just result herein. The voiding of the contract would result in a windfall to plaintiffs of the sum of $15,000 in addition to the $5,000 discount they received on the purchase price of the machinery by reason of the loan. It is recognized that " It is the necessitous individual who is protected by legislation against usury, because the power of the lender to relieve the borrower's needs creates the opportunity for oppression." (32 N. Y. Jur., Interest and Usury, § 5). But such is not this case. Plaintiffs apparently were represented throughout by an attorney. The original contract of purchase and sale with Eastern provided that the prospective loan should carry an annual interest rate of 10%. It was not, however, until the loan, providing for such rate, and one payment thereon, had been made that plaintiffs suddenly discovered that the agreement possibly could be invalidated.

We conclude that defendant is entitled to judgment on the second counterclaim in his answer in the sum of $13,500 with interest at 6% from April 1, 1968 less the sum of $165 for interest in excess of 6% paid by plaintiffs on April 1, 1968.

The order should be reversed and judgment granted accordingly.

GOLDMAN, P. J., DEL VECCHIO, GABRIELLI and MOULE, JJ., concur.

Order unanimously reversed on the law, with costs, and judgment granted to defendant in accordance with the opinion by BASTOW, J.